# IN RE WADDELL.

(No. 4,171.)

(Submitted April 23, 1918. Decided April 26, 1918.)

[172 Pac. 1036.]

*Attorneys—Disbarment—Unprofessional Conduct—Employment by Both Parties to Action—Deceit.*

Attorneys—Employment by Both Parties to Action—Disbarment.
1. An attorney who, after consulting with a party to a prospective suit relative to the facts and obtaining a sum of money from him to cover court costs and expenses, accepted employment from the adversary of such party, was by him paid a retainer fee and afterward additional compensation, appeared as attorney of record and assisted in the trial of the cause, returning the money paid by the first party only after complaint had been made to a district judge and some two years after receipt thereof, is guilty of such unprofessional conduct as compels disbarment.

[As to disbarment for acting for party adverse to former client, see note in Ann. Cas. 1912B, 214.]

Same—Deceit—Disbarment.
  2.  An attorney who violated instructions given him by a client relative
to the settlement of a claim to the detriment of the client, did not
promptly report the settlement when made or remit the amount due the
client, and three months and a half after settlement had been made
wrote the client that he expected to make settlement in from four to
six weeks, merits disbarment.

PROCEEDINGS for the disbarment of John L. Waddell, an attorney at law.  Adjudged that the name of accused be stricken from the roll of attorneys and counselors at law.

*Mr. Frank Woody,* Assistant Attorney General, argued the cause in behalf of the Prosecution.

*Mr. Homer G. Murphy,* for the Accused, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

John L. Waddell, an attorney admitted to practice law in this state, was accused by the attorney general of unprofessional conduct in a complaint which contains four charges.  After issues were joined, a hearing was had before A. C. Schneider, referee, and a report of the proceedings has been filed in this court.  We deem it unnecessary to consider but two of the charges.

1. In May, 1915, Travers Daniel, Jr., wrote to the accused complaining of certain acts of one W. P. Moncure and soliciting [1]   advice, and information concerning the terms upon which the accused would undertake to prosecute certain actions for Daniels and his wife against Moncure.  Later Daniel and wife conferred personally with the accused, gave to him a statement of the facts concerning their grievances, and paid him $50 to cover court costs and expenses.  The suggestion was made that F. V. H. Collins, of Forsyth, should be secured to assist the accused in handling the business for Daniel and wife.  Beginning with June 8, and continuing until November 15, 1915, the accused wrote to Daniel some twelve letters, each referring to the Moncure matters and the actions to be brought for Daniel,

his wife or both of them. A brief reference to some of these letters will serve to illustrate the character of all of them. On June 8 he wrote that he would see Collins and "go into every phase of the case" and would have Daniel and wife come to Hardin "and we will prepare the papers for filing." On June 21 he wrote that he had completed a thorough investigation of the facts "and in a few days I will try to arrange matters here so that I can see one or both of you relative to the signing of necessary papers and other preliminary arrangements before actual filing of the suit." Later in June he wrote that he would see Collins on July 5 or 6, and said further: "I am working on the law as applied to what facts you have given me." On July 30 he wrote: "I am now preparing all three actions for immediate filing." On August 12 he wrote: "The papers in the three cases are now beginning to look like lawsuits and will soon be in the hands of the sheriff." On September 26 he wrote that he had made arrangements with Collins "to get in these cases." On November 15 he wrote that he had prepared tentative drafts of two complaints and was working on a third. About December 8 Daniel and wife withdrew their business from the accused. and thereafter employed other counsel, who commenced the actions in the spring of 1916. After Moncure had been served with process he retained the accused as his attorney in the actions, paid him a retainer fee of $200 and afterward additional compensation. Waddell appeared as attorney of record for Moncure, assisted in the trial of one of the cases and in the settlement of the others, and never returned to Daniel the $50 he had received in July, 1915, until more than two years later and after Daniel had complained to the judge of the district court.

Notwithstanding this evidence, the accused now denies that he was ever employed or retained by Daniel or his wife, but his denial only adds to his disgrace. The evidence of his employment is conclusive, and his present contention that his employment was contingent upon his receiving a retainer fee is obviously an afterthought. His attempt to shift the responsibility

for his employment by Moncure upon other attorneys is unworthy of any serious consideration. An attorney who is so insensible to the obligations which his profession imposes cannot expect to be permitted to continue to practice in this state.

2. In 1916 the accused received for collection for the Oliver Chilled Plow Works a note executed by C. A. Quarnberg, and [2] an account against Ed. Jenkins. Acting as the attorney for the plow works, the accused commenced an action upon each of these claims and about March 1, 1917, wrote his client that he had an offer of compromise of the Quarnberg matter. In a letter dated March 5, he was authorized to waive any claim for interest and settle upon the basis that Quarnberg pay the principal, costs and attorney fee. On April 19 the accused secured a judgment against Quarnberg for $172.09 principal; $95.87 accrued interest; $7.40 costs, and $50 attorney fee, and on May 12 he received $325.36 in full satisfaction of the judgment, and on the same day repaid to Quarnberg $167 of the amount; in other words, instead of remitting $95.87, the amount of accrued interest, as he had been authorized to do, he remitted $167. On May 21, July 20, and August 3, the plow works wrote the accused inquiring concerning the progress made in the Quarnberg matter, but received no reply until August 29, when Waddell wrote:

"In re Quarnberg Matter.

"Beg to advise that we expect to be able to close this matter in full just as soon as the grain on the land of defendant is in the bin or threshed. This might mean four or six weeks." This letter refers then to the Jenkins claim and concludes: "We will keep in close touch with both of these cases and just as soon as we can do so under the present arrangements we will make remittance."

On August 24 the accused had collected $210.60 on the Jenkins account but made no report until October 4, when he wrote: "I beg to say that in the Jenkins judgment we are proceeding as rapidly in our opinion as possible and hope that within a reasonable time we will be able to secure full satisfaction of same." On October 10 the plow works made a demand upon the accused

for settlement, and on October 16 he remitted $200, explaining the settlement made in the Quarnberg matter and advising the plow works that the balance collected in the two suits had been retained by him as attorney fees and costs. When called to account for the manner in which he had settled the Quarnberg claim, the accused wrote on November 8: ''We settled it exactly upon the letter from you under date of March 5, 1917.'' Soon afterward the accused was dismissed from the employment of the plow works.

The record discloses beyond controversy that the accused violated his instructions in making settlement of the Quarnberg claim; that the matter was finally settled by him on May 12; that he did not report the settlement or remit the amount due his client; that three and a half months thereafter he wrote his client that he expected to get the claim settled in from four to six weeks. This breach of faith and deceit alone would command his disbarment, but his failure to pay over to his client promptly the money he had collected was equally reprehensible. Such conduct cannot fail to bring reproach upon the legal profession and alienate the favorable opinion which the public should entertain for it.

It is ordered that the name of John L. Waddell be stricken from the roll and that he be disbarred from practicing as an attorney or counselor at law in the courts of this state.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.